## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **GEORGE M. CLARKE, III**<br>Baker & McKenzie LLP<br>815 Connecticut Avenue, N.W.<br>Washington, D.C. 20006-4078<br>(202) 452-7000, | ) ) ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | Civil Action No. |
| **INTERNAL REVENUE SERVICE**<br>1111 Constitution Avenue, NW<br>Washington, DC 20224, | ) ) ) ) | |
| **Defendant.** | ) ) | |

### COMPLAINT FOR INJUNCTIVE RELIEF

1.      This is an action under the Freedom of Information Act (the "FOIA"), 5 U.S.C. §552, as amended, seeking injunctive relief that Defendant immediately and fully comply with Plaintiffs' request under the FOIA.

### Jurisdiction and Venue

2.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §552(a)(4)(B) and 28 U.S.C. §1331. Venue lies in this district pursuant to 5 U.S.C. §552(a)(4)(B).

### Parties

3.      Plaintiff George M. Clarke III is an attorney with Baker & McKenzie LLP, admitted to practice in the District of Columbia, Bar No. 480073, with offices at 815 Connecticut Avenue, N.W., Washington, D.C. 20006-4078.

1

4.     Defendant Internal Revenue Service ("Defendant," or the "IRS") is an agency of the federal government within the meaning of 5 U.S.C. §552(f), with its headquarters in Washington, D.C., and is subject to the requirements of the FOIA. The IRS is the federal agency with possession and control of the requested records and is responsible for fulfilling Plaintiff's FOIA request.

## Statutory Framework

5.     The FOIA requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

6.     An agency has 20 working days after receipt of a request in which to determine whether to comply with the request, and then must immediately notify the requester of its determination and reasons therefor, and of the right of the requester to appeal an adverse determination to the agency's head. 5 U.S.C. §552(a)(6)(A)(i).

7.     In "unusual circumstances" the time limits "may be extended by written notice" which sets forth the date a determination is expected to be sent and which generally does not provide for an extension of more than 10 working days. 5 U.S.C. §552(a)(6)(B)(i).

8.     The agency must notify the requester if the request cannot be processed within such time, and must provide the requester the opportunity to limit the scope of the request so it can be processed within such time or the opportunity "to arrange with the agency an alternate time frame for processing the request or a modified request." 5 U.S.C. §552(a)(6)(B)(ii). A refusal to modify the request or arrange an alternate time frame is a consideration in determining whether "exceptional circumstances" exist. Id.

9.     If the agency fails to comply with the time limit provisions, the requester "shall be deemed to have exhausted his administrative remedies." 5 U.S.C. §552(a)(6)(C)(i). If the

government can show "exceptional circumstances" and the exercise of "due diligence," a court may give the agency additional time to respond.  Id.

10.     This Court has jurisdiction upon receipt of a complaint "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. §552(a)(4)(B).

### The FOIA Request

11.     Over one year ago, on October 28, 2005, Plaintiff wrote a letter to Maureen Sapero, FOIA Request Officer for the IRS in Washington, D.C. (the "FOIA Request," Exhibit A).  In the FOIA Request, Plaintiff specifically requested records relating to a draft proposal prepared by the IRS dated March 19, 1982, including the draft proposal itself (the "Proposal"). The Proposal was a legislative proposal which eventually became sections 6221 through 6231 of the Internal Revenue Code.  A report prepared by the Committee on Partners and Partnerships of the New York State Bar Association regarding proposed partnership audit legislation, dated April 28, 1982 (the "Report," Exhibit B), references the Proposal.

12.     Based on the Report, the Proposal would evidently provide support for the position that Code section 6229 is a partnership statute of limitations separate and apart from the general statute of limitations of Code section 6501.  The IRS takes the contrary view that Code section 6229 is merely a minimum period which may extend the general statute of limitations of Code section 6501.  See, e.g., AD Global Fund, LLC v. U.S., 2006 U.S. App. LEXIS 1648 (Fed. Cir. 2006).

13.     Janice P. Rudolph, Tax Law Specialist with the IRS, replied on December 2, 2005 (Exhibit C).  In her letter, she acknowledged receipt of the FOIA Request and stated that additional time was needed to locate and consider releasing the requested IRS records, and that

3

the IRS would try to respond within 90 business days. Additional time was requested, but access to the requested items was not denied. Plaintiff agreed to the extension of time.

14.    There was no further written correspondence from Ms. Rudolph, Ms. Sapero, or any other IRS FOIA personnel within the 90 days.

15.    After the 90-day period, Plaintiff called the IRS several times for an update on the status of the FOIA Request since nothing had yet been received. Plaintiff still received no response to the FOIA Request.

16.    On October 5, 2006, Ms. Rudolph, at Ms. Maclane's direction, left a phone message for Plaintiff. She stated that on April 24, 2006, she had contacted the Chief Counsel to inform them of the urgency of the request. However, her office had still not received any information or an update on the status of the FOIA Request and was still waiting. (A transcript of that phone message is provided as Exhibit D.) She suggested that the recent flooding of the IRS headquarters building in Washington may have delayed matters, but stated "I can't really give you explanation except for the fact we are waiting." (Id.)

17.    With the exception of the aforementioned letter and phone call, Plaintiff has received no other communication regarding the FOIA request. All Plaintiff has been able to learn is that Chief Counsel has delayed a FOIA Request response which may contain important information contrary to the IRS' interpretation of Code section 6229.

18.    Because the IRS has failed to comply with the FOIA time limit provisions, Plaintiff has now exhausted their administrative remedies in accordance with 5 U.S.C. §552(a)(6)(C)(i).

## **Claims For Relief**

19.    Plaintiff reasserts and incorporates by reference all preceding paragraphs.

4

20.    Plaintiff has properly requested records within the IRS' control in accordance with the FOIA.

21.    Plaintiff is entitled under the FOIA to access the requested records.

22.    Defendant has wrongfully withheld the requested records in violation of the FOIA.

23.    Plaintiff has exhausted his administrative remedies with regard to the wrongfully withheld records.

24.    Plaintiff is therefore entitled to injunctive relief.

### **Prayer For Relief**

25.    WHEREFORE, Plaintiff respectfully requests that this Court:

a.    Enjoin the IRS from withholding and order the IRS to produce for Plaintiff and for the public the documents Plaintiff requested in the FOIA Request, in accordance with 5 U.S.C. §552(a)(4)(B).

b.    Award Plaintiff reasonable attorney fees and other litigation expenses incurred in prosecuting this action, in accordance with 5 U.S.C. §552(a)(4)(E).

c.    Grant such other and further relief as the Court may deem just and proper.

Dated:  November _28_, 2006

Respectfully submitted,

George M. Clarke III
(Bar No. 480073)
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, D.C.  20006-4078
Phone: (202) 452-7000
Fax: (202) 452-7074

Pro Se

5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **GEORGE M. CLARKE, III**<br>Baker & McKenzie LLP<br>815 Connecticut Avenue, N.W.<br>Washington, D.C. 20006-4078<br>(202) 452-7000,<br><br>**Plaintiff,**<br><br>v.<br><br>**INTERNAL REVENUE SERVICE**<br>1111 Constitution Avenue, NW<br>Washington, DC 20224,<br><br>**Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | .<br><br>Civil Action No. |

## DECLARATION OF GEORGE M. CLARKE III

I, George M. Clarke III, pursuant to 28 U.S.C. Section 1746, declare as follows:

1.      On October 28, 2005, I wrote a letter to Maureen Sapero, FOIA Request Officer for the Internal Revenue Service ("IRS") in Washington, D.C. (the "FOIA Request," attached as Exhibit A to Plaintiff's Complaint for Injunctive Relief (the "Complaint")).

2.      In the FOIA Request, I requested any administrative files of the IRS and the Department of Treasury containing any and all documents regarding an IRS draft proposal prepared March 19, 1982, including the proposal itself (the "Proposal"). The Proposal, a legislative proposal which eventually became sections 6221 through 6231 of the Internal Revenue Code, was described in detail in the FOIA Request (attached as Exhibit B to the Complaint).

3.    Janice P. Rudolph, Tax Law Specialist with the IRS, replied by letter on December 2, 2005 (attached as Exhibit C to the Complaint).  She acknowledged receipt of the FOIA Request, stated that additional time was needed to locate and consider releasing the requested IRS records, and indicated the IRS would try to respond within 90 business days.  I agreed to the extension of time.

4.    I received no further written correspondence from Ms. Rudolph, Ms. Sapero, or any other IRS FOIA personnel within the 90 days.

5.    After the 90-day period, I called the IRS several times for an update on the status of the FOIA Request since nothing had yet been received.  I still received no substantive response to the FOIA Request.

6.    On October 5, 2006, Ms. Rudolph, at Ms. Maclane's direction, left me a phone message.  She stated that on April 24, 2006, she had contacted the Chief Counsel to inform them of the urgency of the request.  However, her office still had not received any information or an update on the status of the FOIA Request and was still waiting.  She suggested that the recent flooding of the IRS headquarters building in Washington may have delayed matters, but stated "I can't really give you explanation except for the fact we are waiting."    (A true and correct transcript of the phone message is provided as Exhibit D to the Complaint.)

7.    With the exception of the aforementioned letter and phone call, I have received no other communication regarding the FOIA Request.  All I have been able to learn is that Chief Counsel has delayed a FOIA Request response which may contain important information regarding the interpretation of Code section 6229.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Washington, D.C., on November 28, 2006.

GEORGE M. CLARKE III
(Bar No. 480073)
Baker & McKenzie LLP

**BAKER & McKENZIE**

Baker & McKenzie LLP
815 Connecticut Avenue, NW
Washington, DC 20006-4078, USA

Tel: +1 202 452 7000
Fax: +1 202 452 7074
www.bakernet.com

Asia
Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe &
Middle East
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Dusseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

North & South
America
Bogota
Brasilia
Buenos Aires
Calgary
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

October 28, 2005

Ms. Maureen Sapero
FOIA Request
Headquarters Disclosure Office
1111 Constitution Avenue, N.W.
Room 1571
Washington, DC 20224

George M. Clarke
+1 202 452 7068
george.m.clarke@bakernet.com

**Via Federal Express**

Dear Ms. Sapero:

This is a request for records related to a draft proposal prepared by the Internal Revenue Service, dated March 19, 1982 pursuant to the Freedom of Information Act, 5 U.S.C. §552, as amended ("FOIA"). The draft proposed provisions which eventually became §§6221-6231 to the Internal Revenue Code.

In accordance with FOIA and the applicable regulations, I am requesting the documents listed in this FOIA request on behalf of my capacity as researcher.

I am an "other requester" under Treas. Reg. §601.702(f)(ii)(E). In accordance with Treas. Reg. §601.702(c)(4)(G), I do not wish to inspect the records, but desire copies to be made and furnished without inspecting them. In accordance with Treas. Reg. §601.702(c)(4)(H), I agree to pay the applicable charges incurred to search for and duplicate the requested documents. You may incur up to $100 in charges in connection with this request without further authorization. In the event that the total charges are estimated to exceed that amount, please seek further authorization.

If it is determined that any requested document or record, or any portion thereof, will not be disclosed, please provide the non-exempt documents and records and the non-exempt portions of the remaining documents and records. In the event an exemption is claimed, please provide all segregable, non-exempt portions of any withheld document or record pursuant to 5 U.S.C. §552(b). If any material is to be redacted, please "black out" rather than "white out" or "cut out" any portions for which an exemption is claimed.

Pursuant to 5 U.S.C. §§552(a)(6)(A)(i) and 552(b), if this request is denied either in part or in whole, please provide an index that specifies the exemption(s) claimed for each portion of each document or record withheld. Please provide a detailed description of each document or record withheld, including the author(s) and any recipients, the date of its creation, its subject matter, and its current physical location. In addition, please provide the reason that each document or record falls within the exemption claimed for it. Please also specify the number of pages in each document or record and the total number of pages that are responsive to this request.

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

BAKER & McKENZIE

Specific request:

1. Any administrative files of the Internal Revenue Service and the Department of the Treasury containing any and all documents regarding the draft proposal prepared by the Internal Revenue Service, dated March 19, 1982, **including the draft proposal itself.** The draft was a legislative proposal that eventually became §§6221-6231 of the Internal Revenue Code. This proposal was circulated during Roscoe L. Egger, Jr.'s tenure as Commissioner of the IRS. Kenneth W. Gideon, the Chief Counsel of the IRS at the time was involved in preparing and commenting on the draft, as was the Secretary of the Treasury, the Honorable John E. Chapoton and other Treasury Department officials including David G. Glickman and William S. McKee. For purposes of this request, the term "administrative file" refers to all documents, including drafts and handwritten notes in the IRS' possession without regard to whether such documents are organized in discrete files by the Internal Revenue Service, Department of the Treasury, and subparts or units of either entity.

As set forth in 5 U.S.C. §552(a)(6)(A)(i), 31 C.F.R. §1.5(h), and Treas. Reg. §601.702(c)(9)(ii), we would appreciate a response to this request within 20 working days of its receipt. Please send all documents to me as follows:

> George M. Clarke III
> Baker & McKenzie LLP
> 815 Connecticut Avenue, NW
> Washington, DC 20006-4078

You may direct any question with regard to this request to me. My telephone number is (202) 452-7068 if you have any questions or require further information.

Thank you in advance for your consideration in this matter.

Best regards,

George M. Clarke

GMC/cjh

2

Return to TLC files when finished - Room 4023

Schapiro, R.
Doc 82-5717

## TAX SECTION

# New York State Bar Association

**MEMBERS-AT-LARGE OF EXECUTIVE COMMITTEE**

| | | | |
|---|---|---|---|
| Donald C. Alexander | M Carr Ferguson, Jr. | James B Lewis | Paul Pineo | Richard Stone |
| Herbert L. Camp | Sherwin Kamin | Kevin J. O'Brien | Sidney I. Roberts | Therese B Stuchiner |
| John P. Carroll, Jr. | Jerome Kurtz | James H Peters | Loraine S Rothenberg | Michael H Testa |

April 28, 1982

The Honorable Roscoe L. Egger, Jr.
Commissioner of Internal Revenue
1111 Constitution Avenue, N.W.
Washington, D.C. 20224

Dear Commissioner Egger:

I enclose a report by our Committee on
Partners and Partnerships on proposed partnership
audit legislation.

The principal draftsman of the report was
Peter L. Faber. Simon Jacobson, Martin B. Cowan,
Edwin H. Baker and Laurence Goldfein also
participated in its preparation. It reflects
comments from Richard G. Cohen and the undersigned.

The report was approved at a meeting of the
Executive Committee of the Tax Section.

Sincerely,

Ruth G. Schapiro
Ruth G. Schapiro
Chairman

RGS:jb
Enclosure

cc:    Department of the Treasury

The Honorable John E. Chapoton
David G. Glickman, Esq.
William S. McKee, Esq.

Internal Revenue Service

Kenneth W. Gideon, Esq.



FORMER CHAIRMEN OF SECTION

Thomas C. Plowden-Wardlaw   John E. Morrissey, Jr   Martin D. Ginsburg

NEW YORK STATE BAR ASSOCIATION
TAX SECTION
COMMITTEE ON PARTNERS AND PARTNERSHIPS

Report on Proposed Partnership Audit Legislation[1]

## Introduction

Under the federal tax system, a partnership is not liable
for income tax with respect to its income.  It files an informa-
tion return on Form 1065 reporting its income, deductions, and
credits, and the portion of each allocated to each partner.  The
partners are then responsible for reporting their shares of
partnership items on their individual income tax returns.  The
tax, if any, attributable to these items is paid by each partner
and is affected by his individual circumstances.  Thus, the
income of a profitable partnership can escape tax altogether if
the partners each have losses from other sources that are offset
against it on their individual income tax returns.  Conversely,
losses generated by a partnership can reduce the tax payable by
partners with respect to income from other sources.

Although a partnership does not itself pay federal income
taxes, it may play a significant role in the determination of the
partners' tax liabilities.  In general, elections such as those
pertaining to depreciation and other accounting methods are made

_____

[1]    The principal draftsman of this report was Peter L. Faber.
       Simon Jacobson, Martin B. Cowan, Edwin H. Baker, and
       Laurence Goldfein also helped in the report's preparation.
       Useful comments were received from Richard G. Cohen and
       Ruth G. Schapiro.

-2-

by the partnership, not by each partner.  By becoming a partner, an individual gives up the right to make certain determinations respecting the reporting of his share of partnership income. Nevertheless, the partners are not bound by partnership decisions in several significant respects.

Normally, a partnership files a partnership income tax return and sends a form K-1 to each partner showing that partner's share of the partnership's income, deductions, and credits.  Partners are not, however, required to follow the K-1 forms when preparing their own income tax returns.  If a partner has a reasonable basis for disagreeing with the allocation of a particular item among partners or with the reporting of it on the partnership income tax return, he is free to take his own position.  For example, a partner who feels that the partnership income tax return improperly capitalized an item that should have been deducted as an expense may prepare his own return as if the item had been deducted on the partnership return and not capitalized.

The Service has ordinarily audited partnerships at the partnership level, although partnership audits have occasionally been precipitated by an examination of a partner's return.  The agent reviews the partnership's income tax return and discusses proposed adjustments with a partner having authority to act for the partnership under the partnership agreement or with the

-3-

partnership's professional advisors. The agent and the partnership representative may agree on proposed adjustments or they may disagree. In either case, the partners of the partnership are not bound by their conclusion.

When the audit at the partnership level is completed, the agent must contact each partner so that the adjustments agreed to at the partnership level can be reflected on each partner's return and any additional taxes collected. This requires an examination of each partner's return since the tax impact of the partnership adjustments will depend on the partners' individual circumstances. If partners live in different parts of the country, they will be contacted by agents in their districts, not by the agent who audited the partnership.

Each partner is free to agree or disagree with the adjustments agreed to by the managing partner with the agent who audited the partnership. If partners disagree with those adjustments, each partner is made the subject of a separate administrative proceeding. Partners may consolidate cases into a single administrative proceeding, but they are not required to do so and they are often reluctant to do so because of the disclosure of other information about their tax and financial situations that might result.

Because of the two-level audit process, it often becomes necessary for the Internal Revenue Service to require partners to

-4-

agree to extend the statute of limitations on assessing
deficiencies.  Here again, this must be done on an individual
basis, and the need to insure that each partner extends the
statute places a formidable administrative burden on the Service.

Each partner is entitled to an individual judicial proceed-
ing as well as an administrative one.  If he cannot resolve
matters with the Service at the agent or Appeals Division level,
he receives a 90-day letter applicable to his individual return.
He then has all the options that are normally available to a
taxpayer facing litigation.  He can file a petition with the Tax
Court or can pay the proposed deficiencies and, after his refund
claim is denied or ignored, he can litigate in the Court of
Claims or a Federal District Court.  Thus, the audit of a single
partnership may result in many separate administrative and
judicial proceedings, all independent of the others.  At one
level, this can result in duplication of effort by the Internal
Revenue Service and considerable expense to the government and
taxpayers.  At another level, it can have the unfair result of
partners being treated differently with respect to the same
partnership item.

Previous Responses to the Partnership Audit Problem

The substantive law of Subchapter K and its administration
often seem to follow divergent paths.  While many of the substan-
tive provisions are based on determinations at the partnership

-5-

level, the heart of the administrative process, where taxes are
actually assessed, takes place at the partner level.  Proposals
to make the partnership audit process more effective generally
have attempted to shift the administrative focus to the partner-
ship entity and away from the individual partners.

In 1978, the Treasury Department proposed that partnership
audits be conducted at the partnership level.  Determinations of
adjustments would have been made on behalf of the partnership by
those persons authorized by the partnership agreement to repre-
sent it.  A single administrative conference or judicial proceed-
ing would have been required and each partner would have been
bound by determinations made by the partnership.  The proposal
did not become law.

In 1981, the American Law Institute approved a partnership
audit proposal that also adopted the entity approach but with
significant exceptions.[2/]

The ALI recognized that the interests of different groups of
partners could differ.  It pointed out that the pure entity
approach with no provisions for dissenters' rights could permit a
managing partner to agree to an Internal Revenue Service position
that might reduce his own tax liability but might increase the
liability of the other partners.  Although fiduciary principles

_____

[2/]   American Law Institute Federal Income Tax Project, Tentative
       Draft No.7 (March 20, 1981).

-6-

of partnership law might limit the extent to which this could be
done if bad faith or negligence were shown, the remedies for
objecting partners under applicable state law could be cumber-
some.  The Institute therefore proposed a modified entity
approach.

Individual partners would be allowed to report distributive
shares of partnership items differently from the way in which
they were reported on the partnership income tax return, but they
would be required to disclose the difference on their returns.

In the event of an audit, all partners would have a right to
meet with the examining agent.  Moreover, partners who in the
aggregate had specified interests in an item at issue would be
allowed to have an Appeals conference on that issue and to
litigate it on behalf of the partnership, even if the managing
partners disagreed with this course of action.  These dissenters'
rights could be waived in the partnership agreement.  If proceed-
ings were brought in different judicial forums, consolidation
would be required in the forum in which joinders had been filed
by partners with the greatest interest in the partnership's
profits.

-7-

Internal Revenue Service Legislative Proposal[3]/

    The Service's Proposal would add §§6221-6231 to the Internal
Revenue Code.  Section 6221 contains the general statement that,
except as provided in Subchapter C of Chapter 63, the tax
treatment of any "partnership item" must be determined at the
partnership level.  The remaining provisions specify the circum-
stances in which this general principle will be followed or
ignored.

    The Proposal contemplates that the audit of a partnership
will be conducted at the partnership level.  The partner having
the responsibility for conducting tax proceedings for the
partnership, referred to as the "tax matters partner," is
required to notify the other partners of proceedings in the audit
as is, under certain circumstances, the Internal Revenue Service.
Failures to provide notification can generally be cured within
certain time limits.

    Under §6222(a), a partner is required to treat a partnership
item consistently with the item's treatment on the partnership
return, but inconsistent treatment is permitted under §6222(b) if
the partner notifies the Secretary of the Treasury of the
inconsistency.

---

3/    The following discussion is based on the draft proposal
    prepared by the Internal Revenue Service dated March 19,
    1982 ("Proposal").

-8-

Under §6223(a), the Service is required to notify each partner of the beginning of an administrative proceeding at the partnership level with respect to a partnership item and of a final partnership administrative adjustment resulting from any such proceeding. If a partnership has more than 100 partners, §6223(b) provides that partners with less than a 1% interest in the partnership's profits need not be so notified, although a group of partners in the aggregate having a 5% or more interest in partnership profits may request notification as a group and designate a partner to receive such notice. The Service may rely on information shown on the partnership return in determining names, addresses, and profits interests of partners required to receive notice.

Under proposed §6224, each partner may participate in an administrative proceeding relating to the determination of partnership items at the partnership level. This right may be waived. Procedures are established for settlement agreements to be signed by a partner wishing an opportunity to do so.

Section 6225 provides that taxes may not be assessed as a result of an adjustment of a partnership item before the close of the 150th day after the day on which a notice of final partnership administrative adjustment was mailed to the tax matters partner or, if a judicial proceeding is begun within that time, until the court decision in that proceeding becomes final.

-9-

The tax matters partner has 90 days after the day on which the notice of final partnership administrative adjustment is mailed to him in which to petition for a readjustment with the Tax Court, the Federal District Court for the district in which the partnership's principal place of business is located, or the Court of Claims.  Proposed §6226(a).  If the tax matters partner does not file a petition within this time, any partner entitled to notice (including any 5% group) may file a petition within 60 days after the close of the 90-day period.  If more than one action is brought by other partners, the first such action brought in the Tax Court has priority and all other actions must be consolidated with it.  If no action is brought in the Tax Court, the first action brought in any other court has priority. The tax matters partner may intervene in any such proceeding. Proposed §6226(b).  If any judicial proceeding is brought by the tax matters partner or any other partner, every person who is a partner during the taxable year at issue is treated as a party to the action if he has an interest in the outcome.  Proposed §§6226(c) and (d).  Under §6226(e) a proceeding may not be started in a Federal District Court or the Court of Claims unless the partner bringing the proceeding pays the increase in the partner's tax liability which would result from the changes in the notice of final partnership administrative adjustment.

-10-

Unlike the American Law Institute's approach, the Proposal would permit any partner entitled to notice of an administrative proceeding or final adjustment to start an action in court, no matter how small his interest (subject to a special rule for partners with less than a 1% interest in partnerships with more than 100 partners), even if the tax matters partner had agreed to the contested adjustments.  In this respect, the Proposal has more extensive dissenters' rights than the American Law Institute's proposal.

. A more generous approach to dissenters' rights is also reflected in the procedures for claiming refunds.  Under §6227(a), any partner may request an administrative adjustment of a partnership item within three years after the due date of the partnership return for the taxable year at issue and before a notice of final partnership administrative adjustment is mailed to the tax matters partner.  The tax matters partner may also file a request for an administrative adjustment.  If he does, the Service may treat the changes shown on the request as "corrections of mathematical or clerical errors" to which it can respond immediately with respect to all partners.  The Service may grant the request in full and make adjustments with respect to all partners, it may deny the request and start a partnership administrative proceeding, or it may ignore the request.  Any such request must show the effect of the adjustment on the distributive shares of all partners.

-11-

If a partner other than the tax matters partner requests an administrative adjustment, the Service may process the request with respect to that partner only, may ignore it, or may start an administrative proceeding at the partnership level.

Under §6228(a), the tax matters partner may file a petition with the Tax Court, the Federal District Court of the United States for the district in which the partnership's principal place of business is located, or the Court of Claims if an administrative adjustment request filed by the tax matters partner is not allowed by the Service. This must be done after six months from the date the request is filed and before two years after such date. If the Service mails the partnership a notice of the start of an administrative proceeding with respect to an administrative adjustment request, a court petition cannot be filed until the audit process has run its normal course. In any such judicial proceeding, any person who was a partner during the partnership taxable year involved is treated as a party to the action and must be allowed to participate.

If a partner other than the tax matters partner files an administrative adjustment request which is disallowed or ignored, the partner may start a judicial proceeding. In such case, §6228(b) provides that he will be the only party to the proceeding and that the items in question will be treated as "nonpartnership items." A partner may not file a court petition under

-12-

this provision, however, if the Service has previously mailed to the tax matters partner a notice of the beginning of a partnership proceeding with respect to that year.

Section 6229(a) provides that taxes proposed with respect to a person attributable to a partnership item must be assessed before the later of three years after the later of the date on which the partnership return was filed or the due date for that return or, if the partner's name and address does not appear on the partnership return, one year after the date on which the Secretary receives this information. The statute of limitations can be extended by agreement. Section 6229(c) provides for an unlimited period for assessment of deficiencies with respect to any partner "signing or participating in the preparation of" a fraudulent return. If a return has been fraudulently prepared, the normal three-year statute for partners not participating in the fraud is extended to six years. The six-year statute also applies if the partnership omits from gross income an amount exceeding 25% of the gross income reported on the return. If no partnership return is filed, there is no limit on the time in which deficiencies can be assessed.

Section 6230(a) provides that normal deficiency procedures do not apply to computational adjustments. An exception is made, however, if, within 60 days after a notice of the correction of error is mailed to a partner, the partner requests the Service

-13-

not to make the correction. Similarly, a partner may file a claim for refund on the grounds that the Service incorrectly computed a computational adjustment and may start a judicial proceeding if the claim is not allowed, provided that substantive issues are not involved.

Section 6231 contains definitions and special rules.

The term "partnership" is defined as any partnership required to file a return under §6031(a). This incorporates the definition of "partnership" in §761(a).

"Partner" is defined as a partner in a partnership or any other person whose income tax liability is determined in whole or in part by taking into account partnership items.

"Partnership item" means an item that Treasury Department regulations provide is "more appropriately determined at the partnership level than at the partner level."

"Tax matters partner" is defined as the general partner so designated pursuant to procedures to be set forth in the regulations, or, if no person is so designated, the general partner having the largest profits interest in the partnership at the close of the taxable year involved in the proceeding.

Under §6231(b), items may cease to be treated as partnership items under certain circumstances. This occurs with respect to an item if a partner files a statement of inconsistent treatment with the partnership tax return under §6222(b) and the Service

-14-

mails to the partner a notice of deficiency with respect to the item or the partner asserts an offset attributable to the item in a judicial proceeding.  Non-partnership item treatment also results if the Service disallows a claim with respect to the item, the partner files suit after the Service fails to allow an administrative adjustment request with respect to the item, the Service signs a settlement agreement with a partner with respect to the item, or in certain other circumstances.

General Comments on the Service's Proposal

The Service's general approach is to focus activity at the partnership level, but dissenting partners have substantial rights to determine their own destinies if they disagree with procedural decisions made by the partnership.

The Service's concern for the rights of individual partners is certainly commendable.  Any solution to the partnership audit problem must involve a balancing of administrative efficiency and the protection of individual interests.  The Committee believes that the Proposal may have gone too far in permitting dissenters' rights.  If dissenters are given the right to report their partnership participation on their individual returns in a manner inconsistent with their K-1 forms, to resolve or not resolve controverted issues at various administrative levels within the Service, to decide whether to file a claim for refund, or to choose the forum in which partnership issues are to be litigated,

-15-

then, no matter what limitations are placed on these rights, many of the problems of the present system will continue, although they may be less severe.

The proposal is complex, and much of the complexity results from the accomodation of dissenting partners. It is not at all clear that historical precedent and attitudes created when typical partnerships were simple joint ventures undertaken without a significant tax orientation should apply to the partnerships of the 1980's. Existing procedures are based on the premise that a partnership is an aggregate of individuals with each partner having important and significant rights. We believe that this premise should be reexamined in the context of income tax administration. The Committee feels that the search for a solution to the administrative problem confronting the Service should not be bound by legal principles developed at other times and in other contexts.

The chief impetus for dissenters' rights seems to proceed from a concern that the partner responsible for preparing the partnership income tax return may favor his own personal interests at the expense of those of the remaining partners, in violation of his fiduciary duty to act for the benefit of the partnership as a whole. This is a valid concern. As indicated above, remedies available to the remaining partners under state law may be expensive and time consuming to enforce and might well

-16-

prove to be inadequate. The question at issue is whether the creation of procedural rights in dissenting partners to conduct their own administrative and judicial proceedings is an appropriate remedy. We believe that in general it is not.

A person by entering into a partnership agrees to forego certain freedom of action. He submits his right to manage his investment to the judgment of those persons controlling the partnership. As indicated in the introduction to this report, these rights include rights to make certain tax elections and other decisions pertaining to the tax liabilities resulting from partnership operations. This is particularly true of limited partners who, under applicable law, must surrender their right to participate in partnership management in order to preserve the limited liability that in many cases is for them a prerequisite to becoming a partner.

We believe that requiring a partner to be bound by partnership decisions respecting the conduct of income tax audits is not an unfair restriction. Minority partners can be defended against partnership management self-dealing by dissenters' rights in limited areas such as those pertaining to allocations among partners. Further protection can be afforded by allowing the holders of a majority interest in partnership profits or in a partnership item to have the power to override a decision made by partnership management. One does not have to give each partner

-17-

the right to contest the Service's capitalization of an expense deducted on the partnership income tax return in order to protect these interests.

The Committee believes that the need for a totally enforceable partnership audit system is so great that some limitation of individual rights is justified. We would prefer less generous dissenters' rights than those contained in the Service's Proposal.

## Specific Comments on the Service's Proposal

The following comments assume that the Service's basic premise is followed and are addressed to specific aspects of the Proposal.

### Section 6222    Consistency of Partner's Return with Partnership Return.

The Committee agrees with the general thrust of §6222 that partners should normally be required to treat partnership items in a manner consistent with their treatment on the partnership return and that any departure from consistency should be disclosed on the partner's return. We would suggest that consideration be given to requiring the partner to state on the return his reasons for treating the item differently from its treatment on the partnership return.

-18-

It is appropriate to provide that a partner who relies on a K-1 form received by him from the partnership should be protected from penalties for violating §6222(a) if the K-1 form later proves to be inconsistent with the partnership return. The addition of this provision represents a significant improvement of the Service's January 28, 1982 draft.

Section 6223.  Notice to Partners of Proceedings

Section 6223(a) requires the Secretary to notify each partner of the beginning of an administrative proceeding at the partnership level with respect to a partnership item and of the final partnership administrative adjustment resulting in any such proceeding.  "Administrative proceeding" is not defined, nor is the word "beginning".  It might be appropriate to define "administrative proceeding" in §6231 and to provide that an administrative proceeding begins when notice of audit is mailed by the Service to the partnership.

The treatment of partnerships which are partners in other partnerships is unclear.  It would seem appropriate for the partners of second-tier partnerships not to be counted in applying the 100 partner test of §6223(b)(1).  This might be covered in the Committee reports.  The January 28, 1982 draft did not indicate the extent of the right of partners of second-tier partnerships to receive notices.  The March 19 draft requires a second-tier partnership to notify its partners of notices

-19-

received from the Service.  Placing this responsibility on the partnership rather than on the Service is the correct approach to the problem.

Section 6223(b) provides that a partner in a partnership with more than 100 partners who has a less than one percent interest in the profits of the partnership need not receive notice from the Secretary unless he and a group of partners having in the aggregate a five percent or more interest in profits request notice and designate one of their members to receive notices.  It is not clear when a group of partners must make this designation. More importantly, it is not clear how an interest in "profits" is to be determined.  While §6223(c) allows the Secretary to use the profits interests shown on the partnership return, the determination of profits interests for purposes of preparing a partnership return has always been a source of aggravation for tax return preparers.  Partnership profits can consist of many elements, including capital gains, guaranteed payments, and contingent interests.  Profits from some operations might be shared differently from profits from others.  Although partnerships are required to express the interest of each partner in profits on the partnership income tax return in percentage terms, this is often a wild guess which fortunately does not have any legal significance.

-20-

The reference to "partnership return" in §6223(c)(1) presumably means the return for the taxable year under examination, not the most recent year, but the language is ambiguous. In order to eliminate the uncertainty, the words "for the partnership taxable year under examination" should be added after the word "return." The Committee reports should make clear that the use of additional information authorized by §6223(c)(2) does not permit the Service to fail to mail notice to a person who was a partner during the taxable year under examination but who was no longer a partner when the audit took place.

Section 6223(f) provides that the Secretary may not mail a second notice of final partnership administrative adjustment for a partnership taxable year absent a showing of fraud, malfeasance, or misrepresentation of a material fact. The Secretary should have the burden of proving that such a condition exists.

Section 6223(g) requires the tax matters partner to keep each partner informed of administrative and judicial proceedings for the adjustment at the partnership level of partnership items. It would be appropriate to provide a sanction against the tax matters partner (e.g. a penalty) if he fails to carry out this responsibility. It would also be appropriate to provide some protection for the partners if the tax matters partner fails to notify them of administrative and judicial proceedings.

-21-

## Section 6224    Participation in Administrative Proceedings

Section 6224 provides that each partner may participate in an administrative proceeding relating to the determination of partnership items at the partnership level.  The meaning of "participate" should be clarified in the Committee reports and, perhaps, in the statute.  A partner should not, for example, have the right to require the Internal Revenue Service to bring all documents to his home town for a meeting if he lives 3,000 miles away from the partnership office.  Participation presumably includes the right to be represented by professional advisors, to be invited to meetings with the Internal Revenue Service, and to be notified a reasonable time before any such meeting.  It should not, in our view, include a right to have meetings rescheduled if they are inconvenient for the particular partner.  Participation should include a right to submit legal briefs or memoranda.

The waiver provisions of §6224(b) are cause for concern.  It seems likely that the Service will develop printed forms under this provision on which partners would effectively waive all of their rights to notice and participation.  If revenue agents present these forms to partners in a certain way, it is likely that partners will routinely waive their rights without knowing what they are doing.  If the dissenters' rights provisions are to work effectively, it might be appropriate to limit the waiver provisions to the right to participate in administrative and

-22-

judicial proceedings; partners should not be permitted to waive their rights to notices.

A waiver may be filed "at any time." In order to protect partners against ill-considered waivers, it might be appropriate to provide that a waiver with respect to participation in an administrative or judicial proceeding can be filed only after the proceeding begins. It might also be appropriate to allow partners to revoke their waivers. A partner might conclude after the commencement of a proceeding that he disagrees with the manner in which it is being handled by the tax matters partner. It would not seem burdensome to allow the partner to revoke his waiver of his right to participate in the proceeding at that point and to intervene.

Section 6225. Assessments After Partnership Level Proceedings are Completed

No comment.

Section 6226. Judicial Review of Final Partnership Administrative Adjustments

The tax matters partner may file a petition for a readjustment of partnership items within 90 days after a notice of final partnership administrative adjustment is mailed to him. Although the tax matters partner is required by §6223(g) to keep partners informed of proceedings in general, he should specifically be required to notify other partners of the filing of a petition

-23-

under §6226(a). Otherwise, they will not know whether they have a right to file a petition under §6226(b). Similarly, a partner filing a petition under §6226(b) should be required to notify the tax matters partner who should in turn be required to notify the other partners. Without such notice, the tax matters partner's right to intervene under §6226(b)(5) would be worthless.

Section 6226(c) provides that every person who was a partner during the taxable year at issue in a judicial proceeding shall be a party to the action and shall be allowed to "participate" in the action. As in the case of administrative proceedings, the meaning of "participate" should be clarified in the statute or the Committee reports. Does it include the right to have separate counsel? to agree or not to agree to a settlement? to raise new issues in the proceeding? to call witnesses? to have the proceeding adjourned? to file briefs?

Section 6227. Administrative Adjustment Requests

The tax matters partner should be specifically required to notify the other partners of the filing of an administrative adjustment request and of the Service's disposition of it. Even if the Service agrees to a request filed by the tax matters partner, other partners may disagree with the action and should have a right to object. Similarly, if a partner other than the tax matters partner files an administrative adjustment request, he should be required to notify the tax matters partner who should in turn be required to notify the other partners.

-24-

### Section 6228.   Judicial Review of Administrative Adjustment Requests

The reference to "the date of such request" in Section 6228(a)(2)(A)(ii) is unclear.  The word "filing" should be inserted after the word "of."

The reference to "partner" in §6228(a)(2)(C) is unclear. Presumably, the reference is to the tax matters partner and the words "tax matters" should be inserted before the word "partner." Section 6228(a)(4) provides that other partners may "participate" in an action brought by the tax matters partner with respect to an administrative adjustment request.  Here, too, the meaning of the word "participate" should be clarified.

Section 6228(b)(2) (B) provides that a partner may not file a petition with respect to an administrative adjustment request after the Secretary has mailed a notice of the beginning of a partnership proceeding for the same taxable year to the partnership. If the partnership level proceeding involves items other than that which the individual partner is contesting, he should have the right to bring these items up in the partnership proceeding.  This relates to the meaning of the word "participate" which has been discussed above.

### Section 6229   Statute of Limitations

Section 6229(c)(1) provides that there will be no statute of limitations on the assessment of a deficiency with respect to a

-25-

partner signing or participating in the preparation of a
fraudulent return.

The provision for fraudulent returns seems unduly harsh.  A
partner who signed the return or participated in its preparation
would not be protected by the statute of limitations even if he
was unaware of the false or fraudulent items.  The absence of
statute of limitation protection applies to any acts attributable
to any partnership item, even if the partnership item may not
have been the fraudulent one.  On the other hand, the provision
may not reach far enough.  The Proposal would not make the
unlimited statute of limitations applicable to a partner who was
aware of the fraud as long as he did not sign or participate in
the preparation of the return.  Although it can be argued that
such a person would be committing fraud when he filed his
individual income tax return, an inference could be created by
§6229(c)(1) that the more specific partnership statute of
limitations provision would prevail over the more general
individual one.  A better approach would be to expand the
provision to make clear that a partner who was aware of the fraud
would not benefit from the statute of limitations.

Section 6229(c)(3) provides that there is no statute of
limitations when a partnership fails to file a return. This may
be harsh in the case of accidental or unintended partnerships.
Where individuals in good faith believe they are tenants in

-26-

common and not partners, it would seem unfair for the statute of
limitations to remain open indefinitely.  An exception should be
made if the transactions are reported on the returns of the
partners and the partners believed in good faith that a partner-
ship did not exist.  Problems could also arise if the partners of
a partnership did not realize that it had terminated for tax
purposes in the middle of a taxable year under §708(b) and was
therefore required to file two returns for the year instead of
one.  Perhaps a broad exception should be made for a partnership
that does not have a written partnership agreement or otherwise
has a good faith reason for its failure to file.

Section 6230.    Additional Administrative Provisions.
No comment.

Section 6231.    Definitions and Special Rules.
Section 6231(a)(2) defines "partner" to include a partner
and any other person whose income tax liability is determined by
taking into account "directly or indirectly" partnership items of
the partnership.  The meaning of this provision should be
clarified in the statute or the Committee reports.  It may cover
the situation discussed in connection with the notice provisions
of whether a partner of a second-tier partnership must receive
notices of administrative and judicial proceedings directly since
literally he would seem to be included in the definition.  This

-27-

seems inconsistent with the requirement that the second-tier
partnership notify its partners.  Does the definition include
beneficiaries of trusts, estates, and shareholders of Subchapter
S corporations that are partners?  It would be difficult to treat
trust beneficiaries as "partners" because of the uncertainty of
determining who a trust beneficiary might be. A person might not
be a current beneficiary of a trust but his income in a later
year might be affected by the treatment of partnership items
because of the throwback rules.  In a "sprinkle" trust, a
person's status as a partner would not be determined until the
trustee makes a decision as to whether to distribute income or
corpus to him during the trust's taxable year within which the
partnership's taxable year ends.

The "other persons" in §6231(a)(2) would literally include a
person who filed a joint return with a person who was a partner.

The definition of "partnership item" in §6231(a)(3) includes
any items "to the extent regulations prescribed by the Secretary
provide that, for purposes of this subtitle, such item is more
appropriately determined at the partnership level than at the
partner level."  The status of the Secretary's determination of
appropriateness is unclear.  Read literally, this provision says
nothing more than that the regulations must state that a particu-
lar item is more appropriately determined at the partnership
level than at the partner level.  If the intention is for these

regulations to be "legislative" with respect to a requirement that they be limited to items which in fact are more appropriately determined at the partnership level than at the partner level (which suggests a limited scope of judicial review), the provision should be revised to read as follows:

> "... to the extent that the Secretary in regulations provides that such item is more appropriately determined at the partnership level than at the partner level."

If the Secretary is to be given absolute discretion in determining partnership items, the reference to the appropriateness of the determination should be deleted.

Section 6231(a)(7)(B) provides that, if no tax matters partner is designated, the tax matters partner will be the general partner having the "largest profits interest in the partnership" at the close of the taxable year at issue.  As discussed above in connection with §6223, the determination of the size of a partner's profits interest at a particular time may be difficult.  Some definition of "profits interest" should be provided.

Section 6231(b)(1) indicates the circumstances in which an item will no longer be a partnership item.  This seems to contemplate that the provision will be applied on a partner-by-partner basis.  In order to make this clear, the words "with

-29-

respect to a partner" should be inserted after the words "nonpartnership item" in the second line.



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

December 2, 2005

George M. Clarke
Baker & McKenzie LLP
815 Connecticut Avenue, NW
Washington, DC 20006-4078

Re:  Control Number 03-2006-00234

Dear Mr. Clarke:

We must ask for additional time to locate and consider releasing the Internal Revenue
Service records covered in your October 28, 2005, Freedom of Information Act (FOIA)
request received in our office November 4, 2005 seeking any administrative files of the
Internal Revenue Service and the Department of the Treasury containing any and all
documents regarding the draft legislative proposal that became Section 6221-6231 of the
Internal Revenue Code.  We will try to respond within 90 business days from the date of this
letter.  We are sorry for any inconvenience the delay may cause.

If you agree to this extension of time, no reply to this letter is necessary.  You will still
have the right to file an appeal if we subsequently deny your request. You may wish to
consider limiting the scope of your request so that we can process it more quickly.  If you
want to limit your request, please contact the person whose name and telephone number
are shown above.

If you do not agree to this extension and do not want to modify the scope of your request,
you may file suit.  See 5 U.S.C. 552(a)(6)(C)(i).  You may not appeal this letter. See revised
FOIA regulations, at 31 C.F.R. 1.5(j) and 65 FEDERAL REGISTER 40503-40516
(June 30, 2000).

To file suit you must petition the U.S. District Court in the district in which you live or work,
or where the records are located, or in the District of Columbia, to obtain a response to
your request.  Your petition will be treated according to the Federal Rules of Civil Procedure
which apply to actions against any agency of the United States.  These procedures require
that the IRS be notified of the pending suit, through service of process, which should be
directed to:

Commissioner of Internal Revenue
Attention:  CC:PA:DPL
1111 Constitution Avenue, N.W.
Washington, D.C.  20224

Mr. Clarke
Page 2

If the court concludes you have unreasonably refused to limit your request or to accept the alternate timeframe for response, it may find that our failure to meet the statutory time frames in the FOIA is justified. See 5 U.S.C. 552(a)(6)(C)(iii).

If you have any questions, please reference the case number indicated above and contact me at IRS, Disclosure Office 3 - FOIA, 1111 Constitution Avenue, NW, IR-1565, Washington, DC 20224 or call me at (202)622-3108.

We will try to make our determination and provide the appropriate responsive information to you as quickly as possible.

Sincerely,

Janice P. Rudolph
Tax Law Specialist
Disclosure Office 3 - FOIA
Badge No. 50-06294

**From:** Peterson, Jana
**Sent:** Thursday, October 05, 2006 9:47 AM
**To:** Clarke, George M
**Subject:** Oct. 10, 2006 - Voice mail from Internal Revenue Service re FOIA request

Good Morning Mr. Clarke, this is Mrs. Rudolph with Internal Revenue Service. I received the message from my manager, Jill McLean, indicating that I needed to give you a call to give you a status of your FOIA request. As of April the 24th, I know you spoke to Mr. McLean and she informed you that Council has your request and we are waiting for response from them and that you were very interested in obtaining the [chapter] report as soon as possible. On that day, I also contacted our Chief Council office, as my manager instructed, to inform them that you are urgently awaiting of that information. We are still in the waiting pattern. We have not received any information or status since that time on this FOIA request. I don't know if part of it could be due to the flooding in the main building since some of their files are so voluminous they were not able to carry everything out there other site. I can't really give you explanation except for the fact we are waiting. As soon as we get something from Chief Council, I will put fort every effort I have, and I can, to get the response to you as soon as possible. I am sorry for any inconvenience this matter may cause you. Thank you very much. Bye, bye.

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**I (a) PLAINTIFFS**

George M. Clarke III

**DEFENDANTS**

Internal Revenue Service

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT          11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Baker & McKenzie LLP
815 Connecticut Avenue NW
Washington, DC  20006-4078

CASE NUMBER: 1:06CV02030

JUDGE: Emmet G. Sullivan

DECK TYPE: FOIA/Privacy Act

DATE STAMP: 11/29/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
◉ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENS
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)**          OR          **○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| O  G. Habeas Corpus/ 2255 | O  H. Employment Discrimination | O  I. FOIA/PRIVACY ACT | O  J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O  K. Labor/ERISA (non-employment) | O  L. Other Civil Rights (non-employment) | O  M. Contract | O  N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  O 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi district Litigation  O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

I am seeking injunctive relief that the Defendant comply with my request under the Freedom of Information Act, 5 U.S.C. Sec. 552.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  **DEMAND $** _____  Check YES only if demanded in complaint  **JURY DEMAND:**  YES ☐  NO ☐

**VIII. RELATED CASE(S) IF ANY** n.a.  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE  11/29/06    SIGNATURE OF ATTORNEY OF RECORD  _____

29

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.